# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 1:12-cv-319-RJC

| | |
|---|---|
| HAYWARD LEE ROSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 10), and Memorandum in Support, (Doc. No. 11), and Defendant's Motion for Summary Judgment, (Doc. No. 12), and Memorandum in Support, (Doc. No. 13).

## I.     BACKGROUND

### A.     Procedural Background

Plaintiff Hayward Lee Ross ("Plaintiff") seeks judicial review of Defendant's denial of his social security claim. (Doc. No. 1). On July 2, 2009, Plaintiff filed an application for a period of disability, Social Security Disability Insurance, and Supplemental Security Income benefits, alleging that he became disabled on August 31, 2008. (Doc. No. 8-3 at 24). The Commissioner initially denied Plaintiff's application on August 19, 2009, and upon reconsideration on January 22, 2010. (Id.).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (2012).

On October 7, 2010, Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (Doc. No. 11 at 2). The ALJ issued a decision on February 25, 2011, denying Plaintiff's claim. (Id.). Plaintiff appealed the ALJ's decision on March 7, 2011. (Id.). Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 7, 2012. (Id. at 2-3). Therefore, the ALJ's decision became the final decision of the Commissioner. (Id. at 3). Plaintiff has exhausted his available administrative remedies, and the case is now ripe for review under 42 U.S.C. § 405(g).

B. Factual Background

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes,[2] at any time between August 31, 2008 and February 25, 2011. To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from August 31, 2008 to February 25, 2011.

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a) (2012). The five steps are:

(1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no,

---

[2] Under the Social Security Act, 42 U.S.C. §§ 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and

(5) whether, considering claimant's RFC, age, education, and work experience, he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled.

## II.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979). As the Social Security Act provides, if the Commissioner's findings as to any fact are supported by substantial evidence, they shall be conclusive. 42 U.S.C. § 405(g); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . ."). "Substantial evidence" has been defined as "more than a scintilla and

3

[it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

On appeal to this Court, Plaintiff argues that the ALJ erred as a matter of law in denying his claim on three grounds: the ALJ did not (1) ask the vocational expert ("VE") a proper hypothetical question, (2) resolve the conflict between the vocational expert's testimony and information contained in the Dictionary of Occupational Titles, ("DOT"), and (3) properly assess the credibility of Plaintiff's statements. (Doc. No. 11). The Court reviews each of these arguments in turn.

### A. The ALJ's Questioning of the VE and Conflict Resolution of the VE and DOT[3]

The ALJ concluded that Plaintiff had the residual functional capacity to perform sedentary work,[4] as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), except that he could not

---

[3] The Court will analyze Plaintiff's first and second objections in the same subsection since the factual background is essentially the same.

[4] The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking

4

climb any ropes, ladders, or scaffolds; he was limited to jobs that allowed him to sit for eight hours in a workday, but which would allow him to change position, and stand as needed; he could lift no more than ten pounds and walk distances no further than twenty-five yards at a time; and he could only engage in occasional overhead bilateral reaching and climbing of ramps and stairs. (Doc. No. 8-3 at 29). The ALJ further determined that since Plaintiff's ability to perform the full range of sedentary work was impeded by nonexertional limitations, he had to consult a vocational expert ("VE") in order to carry the Commissioner's burden. (Id. at 34). In response to the ALJ's hypothetical question, which Plaintiff argues did not accurately account for the limitations in the RFC determination, the vocational expert testified that Plaintiff could perform representative positions, such as general information clerk, lamp shade assembler, and lock assembler. (Id. at 63). Ultimately, the ALJ determined that based on the framework of the vocational expert's testimony and Medical-Vocational Rule 201.21, there were other jobs in the national economy that Plaintiff could perform, and therefore he was not disabled. (Id. at 34).

Plaintiff contends that the ALJ failed to include the limitation of sitting eight hours in a workday. (Doc. No. 11 at 11-14). According to Plaintiff, this limitation was critical, as in order to perform sedentary work, an individual must be able to stand and walk for a total of two hours in an eight-hour day. (Id. at 13); SSR 96-9p at *3. At the hearing, the VE was posed the following hypothetical:

> Assume we have a hypothetical person who's age ranges from forty-six to forty-eight, who can sit for eight hours, who can stand as needed for breaks, who can

---

and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Social Security Ruling 96-9P.

> walk twenty-five yards and lift ten pounds, who is limited to occasional overhead
> reaching, no climbing ladders, ropes and scaffolds; and occasional climbing of
> ramps and stairs. Are there any sedentary jobs such a person can perform?

(Doc. No. 8-3 at 61-62). In response, the vocational expert identified representative sedentary jobs that Plaintiff could perform. (Id. at 62). The Court finds that through this question, the VE understood all of the restrictions imposed on Plaintiff, including the limitation that he had to sit for eight hours, and was thus able to accurately surmise Plaintiff's job potential. (Id. at 61-62). Therefore, given that the ALJ included the restrictions from his RFC determination in the hypothetical question to the vocational expert, and the vocational expert was able to identify sedentary jobs based on those restrictions (Id. at 62), there is no error in the ALJ's step-five determination.

Plaintiff also argues that the ALJ violated Social Security Ruling ("SSR") 00-4p, because the ALJ failed to resolve the conflict between the vocational expert's testimony and information contained in the DOT. (Doc. No. 11 at 19). Plaintiff goes on to state that the jobs identified by the vocational expert did not meet the limitations set out in the ALJ's hypothetical question, as both the lamp shade assembler and the lock assembler positions require frequent reaching, while the ALJ limited him to occasional overhead bilateral reaching. (Id. at 19-20). However, overhead reaching is a specific subset of reaching, and Plaintiff failed to present any evidence that either the lamp shade assembler or the lock assembler jobs require frequent overhead reaching, as opposed to frequent reaching in general. (See Id. at 19-20). Moreover, SSR 00-4p speaks to situations where there is an "apparent unresolved conflict" between the vocational expert's testimony and the DOT, but here, the conflict was not apparent, as it was not identified at the hearing. (See Doc. No. 8-3 at 62-64); see also Carey v. Apfel, 230 F.3d 131, 146-147 (5th

6

Cir. 2000) (stating that "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing"). Thus, the Court finds that there was no error in the VE's inclusion of Plaintiff's reaching limitations in his assessment of job requirements and availability. Finally, any supposed inconsistency between the vocational expert's testimony and the DOT regarding the assembler positions is irrelevant since the vocational expert also stated that Plaintiff could work as a general information clerk, void of any reaching requirements, and there are 4,800 of those jobs, which constitutes a significant number of positions in the national economy. (Doc. No. 8-3 at 63); see Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (holding that 110 jobs constitute a significant number).

      B.      <u>Whether the ALJ's Credibility Assessment is Supported by Substantial Evidence</u>

Plaintiff contends that the ALJ's credibility finding is not supported by the evidence in the record. (Doc. No. 11 at 14-19). It is the duty of the ALJ to make credibility decisions. <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996). In determining whether the claimant's statements are credible, the ALJ must first establish that he meets the threshold requirement of suffering from an underlying medical impairment, which could reasonably be expected to cause the pain alleged. SSR 96-7p, at *2. If the claimant is found to have met this threshold standard, then the ALJ will consider other evidence of pain, including: 1) daily activities; 2) location, duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side-effects of any medication; 5) treatment, other than medication received;

6) any means used to relieve pain; and, 7) other factors concerning functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In the present case, the ALJ properly evaluated Plaintiff's subjective complaints. First, the ALJ set forth the two-part standard for assessing a claimant's credibility. (Doc. No. 8-3 at 29). The ALJ then discussed Plaintiff's hearing testimony, including the location of his pain, his treatment, his medication, his functional restrictions, his activities of daily living, and aggravating factors. (Id. at 30). Ultimately, the ALJ concluded that while Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with an RFC for a range of sedentary work.[5] (Id. at 30).

In reaching that finding, the ALJ noted that while Plaintiff's alleged onset date was August 31, 2008, his medical records immediately prior to and after that date did not disclose any significant complaints that would prevent him from working. (Id. at 31). The ALJ then noted that in July 2008, Plaintiff presented to a community clinic because he needed a physical for a job. (Id.). The ALJ also noted that in subsequent visits, Plaintiff would complain of chronic knee pain, but on examination, his knee joint was stable. (Id.). The ALJ further noted that though there was a notation that Plaintiff was injured on the job and received workers compensation, it was unclear what the notation to workers compensation was referring to. (Id.).

---

[5] The ALJ considered the state agency physician's conclusions that Plaintiff can sit, stand, or walk for about six hours in a work day, can carry ten pounds frequently and twenty pounds occasionally, and is only somewhat restricted in the use of his left arm for overhead reaching. He then adjusted the physician's findings, based on the totality of the evidence, to limit his lifting and carrying capacity to ten pounds and allowing him to sit for six hours in an eight hour work day. (Id. at 32-33).

8

The ALJ added that in December 2008, Plaintiff had no complaints of musculoskeletal pain. (Id.).

The ALJ then found that Plaintiff attributed most of his difficulties to his neck surgery in July 2010, and the fact that he had surgery indicated that his symptoms were genuine. (Id.). The ALJ went on to conclude, however, that although Plaintiff's surgery would normally weigh in his favor, that factor was offset since his records revealed that his surgery was generally successful, and his post-surgical evaluations established that he had made good progress. (Id.). The ALJ then noted that Plaintiff's October 2, 2010 examination indicated that his chief complaints were not neck pain or weakness in his arm, but rather, voice changes and difficulty swallowing pills, and his examination was normal. (Id. at 32). Finally, the ALJ noted that over the past 12 months, Plaintiff's blood pressure was fairly well-controlled. (Id.).

Plaintiff next claims that the ALJ's credibility finding was merely "meaningless boilerplate" language. (Doc. No. 11 at 14-15). However, the Court finds the ALJ's credibility determination was not meaningless boilerplate language and instead was sufficiently supported by substantial evidence. While Plaintiff correctly points out that the Seventh Circuit has reservations about the use of the boilerplate language, that Court also concluded that the boilerplate language is not an issue so long as the ALJ provides a sufficient basis for his credibility determination. See Richison v. Astrue, 462 F. App'x 622, 625 (7th Cir. 2012). Here, the ALJ did not simply rely upon the boilerplate language, but instead, explained with citations to specific findings in the record that Plaintiff's allegations were contradicted by the evidence in the record. (Id. at 31-32). Therefore, the ALJ's credibility finding was proper, as he explained the reasoning for his finding, with specific reference to the evidence that supported his decision.

Plaintiff also asserts that the ALJ's rationale for his credibility finding was flawed. (Doc. No. 11 at 16). Instead, substantial evidence supports the ALJ's finding that Plaintiff's neck surgery was successful while post-surgical evaluations indicated that he had made good progress. In reaching this conclusion, the ALJ referenced Plaintiff's treatment records from Carolina Spine & Neurosurgery Center, where Plaintiff underwent his neck surgery and subsequent physical therapy. (Doc. No. 8-9 at 35, 71-80). A review of those reports reveals that on July 28, 2010, Plaintiff's physician at Carolina Spine and Neurosurgery Center observed that his upper extremity muscle strength was rated as 5/5, his sensation was intact, his calves were not tender, and his gait was smooth and coordinated. (Id. at 36). While the medical note also indicated that Plaintiff was having difficulty swallowing and had rated his pain as 6/10 (Id.); those were Plaintiff's subjective reports of his symptoms, and "the mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion." Morris v. Barnhart, No. 03-1332, 2003 WL 22436040, at *4 (3d Cir. Oct. 28, 2003) (citing Craig, 76 F.3d at 590 n.2.).

Plaintiff further maintains that the ALJ ignored his testimony regarding pain, and selectively cited to the medical records regarding his pain, problems swallowing, and upper extremity numbness and tingling. (Doc. No. 11 at 18). A review of the hearing decision reveals, however, that the ALJ did not ignore any evidence, as he discussed Plaintiff's hearing testimony and provided a rationale for his negative credibility finding. (Doc. No. 8-3 at 30-32). Plaintiff also failed to identify any specific pieces of evidence that were not considered. (See Doc. No. 11 at 18). Further, the ALJ discussed Plaintiff's complaints of pain in his neck, arms, and shoulders, his treatment for his swallowing problems, (Doc. No. 8-3 at 30), and his reports of

10

upper extremity numbness and tingling. (Id. at 31). As such, the ALJ fully evaluated the evidence in the record.

Ultimately, as the credibility determination is wholly within the authority of the ALJ, and the ALJ stated the specific evidence that went into his conclusion, his decision appears to be supported by substantial evidence. Craig, 76 F.3d at 589; Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

## IV. CONCLUSION

In light of the deferential standard of review applied under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), the Court finds that there is substantial evidence to support the Commissioner's final decision.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No.10), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No.12), is **GRANTED**; and

3. The Clerk of Court is directed to close this case.

_____
Robert J. Conrad, Jr.
United States District Judge